UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| MICHAEL PASSMORE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHRIS WILLIAMS, ) <br> M. KELLEY Library Staff Clerk, ) <br> J.R. SMITH Internal Affairs Lead ) <br> Investigator, ) <br> ) <br> Defendants. ) | No. 2:22-cv-00092-JPH-MG |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Michael Passmore, an Indiana Department of Correction ("IDOC") inmate housed at Putnamville Correctional Facility, filed this lawsuit alleging that Defendants retaliated against him because of his grievance and litigation activity. Defendants have moved for summary judgment. Dkt. [84]. For the reasons below, that motion is **GRANTED**.

## I.
## Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility

1

determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment.[1] Fed. R. Civ. P. 56(e).

---

[1] Defendants object to the length and format of Mr. Passmore's response. Dkt. 103. As to the length, Mr. Passmore's 69-page memorandum of law far exceeds the 30-page limit provided by the Court's local rules. S.D. Ind. L.R. 7-1(e). And both Mr. Passmore's statement of disputed facts and his declaration include a mixture of facts, arguments, and conclusory statements. The Court will not disregard Mr. Passmore's response materials in their entirety given his pro se status. Although the Court may strictly enforce its local rules, "[i]t does not follow . . . that district courts cannot exercise their discretion in a more lenient direction: litigants have no right to demand strict enforcement of local rules by district judges." *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

2

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Passmore and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Passmore has been housed at Putnamville since February 8, 2018. Dkt. 86-1 at 24 (23) (Passmore Dep., Part 1).[2]

Defendants were employees at Putnamville. Dkt. 86-3 at 2, 22, 27-28 (Defendants' Answers to Passmore's First Set of Interrogatories and Requests for Admissions.). Chris Williams was an administrative assistant, grievance specialist, and immediate supervisor over the law library supervisor. *Id.* at 2. Marah Kelley was the law library supervisor. *Id.* at 22. James Smith was the lead investigator for the Office of Investigations and Intelligence ("OII"). *Id.* at 27-28.

### B. Relevant IDOC Policies

IDOC policy provides that an inmate cannot possess another inmate's personal information, including but not limited to personnel file, offender packets, medical or mental health records, photographs, Social Security Numbers, home addresses, financial information, or telephone numbers. Dkt.

---

[2] When citing to Mr. Passmore's deposition, which is split into two exhibits, the Court references the page number of the PDF first, followed by the page of the deposition in parentheses.

86-5 at 9. Violating that policy is listed as "Class B Offense 247—Possession or Solicitation of Unauthorized Personal Information," ("Offense 247"). *Id.*

The Indiana Department of Correction Policy and Administrative Procedure 02-01-101, Offender Personal Property, outlines the policies and procedures for inmates' possession of personal property. Dkt. 86-8 (Offender Personal Property, 02-01-101). Section XII, Seizure of Property, states that "All prohibited property including altered property or contraband found by staff shall be seized." *Id.* at 13. If an inmate's property is seized, he is to receive written notice of the seizure using State Form 36030, "Notice of Confiscated Property." *Id.*

### C. Mr. Passmore's Previous Interactions with Defendants

Mr. Passmore had filed several grievances against Ms. Kelley because he believed that she was not processing electronic filings correctly and had erroneously charged him for copies. Dkt. 17 at 4 (Amended Complaint). For the grievance about copies, Mr. Passmore alleged that Ms. Kelley knew that she was not supposed to charge him for his copy of e-filed documents and that this grievance complaining about the copy charge started them "off on a bad foot right out of the gate." Dkt. 86-1 at 33 (32), 36 (35).

Mr. Passmore had also filed a grievance against Mr. Williams in February 2020 accusing Mr. Williams of deleting inmates' files off a law library computer to thwart their litigation efforts. Dkt. 17 at 4, 23. Mr. Williams stated that he never deleted inmate files from law library computers, as staff were not allowed to. Dkt. 86-3 at 3-4. However, the Indiana Department of Technology had

4

conducted an update on all the computers across the state, and some inmates' files had been accidentally deleted from computers as a result.[3] *Id.* at 3. Regardless, Mr. Passmore alleged that Mr. Williams was "very hostile" against inmates who filed lawsuits against Putnamville staff. Dkt. 17 at 4.

Mr. Passmore also believed that Mr. Smith was upset that Mr. Passmore had filed a lawsuit against another OII employee. *Id.* at 5 (citing *Passmore v. Nauman,* Case No. 2:20-cv-00584-JPH-MJD, S.D. Ind.).

### D. Confiscation of Mr. Passmore's Legal Documents

On April 1, 2021, Mr. Passmore was working with declarations from other inmates that he intended to use in two pending lawsuits—one in this Court and the other in state court—alleging that Wexford of Indiana, LLC, had a practice or policy of denying inmates a certain type of medication. Dkt. 86-1 at 39-44 (38-40); dkt. 95 at 18, ¶ 28 (Passmore Decl.); *see also Passmore v. Indiana Dep't of Corr., et al.*, 2:20-cv-00533-JMS-MKK (S.D. Ind.) *and Passmore v. Spanenburg,* 49D01-2005-PL-016814. Mr. Passmore understood from doing legal research that this type of claim required evidence of other inmates who had been denied medication. Dkt. 95 at 18, ¶ 28. So he had prepared four declarations for other inmates to sign stating that their prescriptions had been discontinued. *Id.* Mr. Passmore was going to include the declarations as exhibits to his responses in opposition to the defendants' motions for summary judgment in his two pending cases. Dkt. 86-1 at 41 (40).

---

[3] Mr. Passmore still believes that Mr. Williams deleted the files, dkt. 95 at 12, ¶ 16, but presents no evidence that Mr. Williams was at fault for this issue.

Mr. Passmore brought the four declarations to Ms. Kelley to have her scan them and copy them. *Id.* at 31 (30). Ms. Kelley testified that IDOC policy requires that she skim inmates' legal documents for inappropriate content. Dkt. 86-3 at 19, 24. She began reading the declarations and then made two phone calls. Dkt. 86-1 at 31 (30). After the calls, Ms. Kelley told Mr. Passmore that she was confiscating the documents per Mr. Smith's and Mr. Williams's instructions because Mr. Passmore was not allowed to possess other inmates' legal work. *Id.* Mr. Passmore explained to Ms. Kelley that the declarations were *his* legal work, as they were in support of his lawsuits against Wexford. *Id.* When she disagreed, he let her confiscate the forms and requested a confiscation form so that he could file a grievance. *Id.* Kelly Culver, another Putnamville inmate, witnessed Ms. Kelley confiscate the papers and, after Mr. Passmore left the law library, tried to explain to both her and Mr. Williams that inmates were allowed to obtain declarations from other inmates. Dkt. 94 at 257–58. Mr. Culver testified that on another occasion, he witnessed Ms. Kelley confiscate another inmate's declarations, but when that inmate "stood firm" that he could have the declarations in support of his lawsuit, she returned them to him.[4] *Id.* at 258.

Ms. Kelley testified that she confiscated Mr. Passmore's declarations because IDOC policy does not allow inmates to possess other inmates' legal work, and that she did not confiscate the documents to upset Mr. Passmore. Dkt. 86-3 at 18, 24.

---

[4] The timing of this incident isn't clear from Mr. Culver's declaration.

6

Mr. Passmore filed a grievance about the confiscation. Dkt. 86-6 (grievance documents). Assistant grievance specialist Mr. Helderman responded to the grievance by referring the matter to the Office of Investigations and Intelligence. *Id.* at 1, 6, 9. Mr. Smith, as a member of the OII, investigated the matter. *Id.* at 1. He determined that the documents "were 'declarations' and contained medical information on other offenders[ ]" and therefore violated Offense 247 because that policy prohibited possessing personal information about another inmate, including medical information. *Id.* at 1.[5] Mr. Passmore's grievance was ultimately denied because the warden and grievance manager agreed with Mr. Smith's resolution of the issue. *Id.*

Defendants testified that they had no personal issues with Mr. Passmore, but that their decision to confiscate the declarations was purely in deference to IDOC policy. Dkt. 86-3 at 5, 10-11, 24, 30, 35.

Mr. Passmore challenges the veracity of those statements. He attested that "[w]hen Mr. Williams sees me in [the] law library, his whole face scrunches up into angry face—whenever he answered a question I asked he would be defensive, aggressive, rude, and disrespectful—very unprofessional." Dkt. 95 at 16, ¶ 26 (minor spelling errors corrected). Mr. Passmore states that Defendants' explanation that the documents violated Offense 247 is pretextual because he was able to present other inmates' declarations that contained

---

[5] Mr. Passmore did not receive a conduct report for having the declarations, despite Mr. Smith's representation that his possession of them violated Offense 247 and could constitute a Class B violation. Dkt. 86-1 at 50-51 (49-50).

7

medical information in support of his other legal actions, including with Mr. Williams's knowledge and approval. *Id.* at 8-9, ¶ 11; 17, ¶ 27. He also attested that the application of Offense 247 to the legal documents conflicted with IDOC Policy that provides that inmates should have open access to courts. *Id.* at 31-32, ¶ 61; dkt. 94 at 127 (IDOC Policy 00-01-102) (providing that the IDOC "shall provide the incarcerated individuals with the ability to prepare, copy, and mail legal documents in accordance with statute, court orders, and Department policy").

As a result of the confiscation of his documents, Mr. Passmore was not able to present the confiscated declarations in opposition to summary judgment in his state case against Wexford, and he ultimately lost that case. Dkt. 86-4 at 10 (Mr. Passmore's Answers to Interrogatories). Mr. Passmore had been appointed an attorney in that case, and he said that the attorney never communicated with him. Dkt. 86-1 at 40-41 (39-40) ("I let her take control, and I never even heard from her. It ended up getting dismissed, I believe, and I never even got a response in the mail from her about it."). His action against Wexford in this Court survived summary judgment and was ultimately resolved via settlement. Dkt. 86-1 at 39 (38); *Passmore v. Indiana Dep't of Corr., et al.*, 2:20-cv-00533-JMS-MKK, dkts. 210, 211 (S.D. Ind. Jan. 30, 2024) (stipulation of dismissal as to Wexford).

Mr. Passmore brought this case in March 2022. Dkt. 2; dkt. 17 (amended complaint). He is proceeding on First Amendment retaliation claims

8

against Mr. Williams, Ms. Kelley, and Mr. Smith. Defendants have moved for summary judgment. Dkt. 84.

### III.
### Discussion

To proceed past summary judgment on a First Amendment retaliation claim, a plaintiff must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) the plaintiff engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in the defendants' decision to take the allegedly retaliatory action. *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to the defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretextual or dishonest. *Id.*[6]

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated

---

[6] Defendants do not dispute that Mr. Passmore engaged in protected First Amendment activity by filing grievances and lawsuits. Dkt. 85 at 11. Because the motivating factor element is dispositive, the Court does not address whether a reasonable jury could find that the alleged deprivation would likely deter future First Amendment activity.

9

differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643–44 (7th Cir. 2013). Here, Mr. Passmore has failed to adduce evidence from which a reasonable jury could conclude that Defendants were motivated by retaliatory animus.

Ms. Kelley told Mr. Passmore that she was confiscating his documents because IDOC policy prevented him from having other inmates' legal work. Dkt. 86-1 at 31 (30). Mr. Passmore's argument that the documents were his legal work and necessary to support his claims at most shows that Ms. Kelley was mistaken about the nature of the documents. *Consolino v. Dart*, 120 F.4th 1324, 1327 (7th Cir. 2024) ("Contending that a [defendant's] decision was mistaken does not imply that it was pretextual. To show that a decision is pretextual, a plaintiff must show that the [defendant] did not believe the explanation—that it is a lie, rather than just a mistake."). Ms. Kelley did not make any ambiguous statements from which a jury could infer retaliatory animus; she was steadfast in her explanation that she was upholding IDOC policy. *Cf. Jones v. Van Lanen*, 27 F. 4th 1280, 1285 (7th Cir. 2022) (reversing grant of summary judgment in favor of defendant who, upon confiscating plaintiff's legal documents from his cell, told the plaintiff "You can't sue me now."). And while Ms. Kelley allowed another inmate to include declarations in his filings on another unspecified occasion, Mr. Passmore has not designated evidence showing that this other inmate was similarly situated. The designated evidence does not show that the event was close in time, that Mr. Passmore

10

relied on the same policies as the other offender, or that the contents of the declarations at issue were similar—including whether the other inmate's declarations included medical information about different inmates, as Mr. Passmore's did. *See Argyropoulos v. City of Alton*, 539 F.3d 724, 735 (7th Cir. 2008) (the "similarly situated inquiry" in a retaliation claim "requires enough common features between the individuals to allow for a meaningful comparison" including the elimination of "confounding variables").

    Mr. Williams' involvement in the confiscation of the declarations was limited to fielding Ms. Kelley's call and directing her to confiscate the declarations. He wasn't involved in the grievance because the assistant grievance manager did the initial response before the matter was referred to OII. Dkt. 86-6. Mr. Passmore has not designated evidence to dispute Mr. Williams's testimony that he directed Ms. Kelley to confiscate the declarations because Mr. Passmore's possession of them violated IDOC policy. Dkt. 86-3 at 5, 9-11. Mr. Passmore's observations that Mr. Williams would scowl at him in the law library and speak rudely to him is too speculative to create a triable issue of fact on a retaliatory motive with respect to the confiscation. *See Debrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (concluding that a prisoner's verified complaint that provided only "speculation regarding the officers' motive" for destroying his documents was insufficient to survive summary judgment on a First Amendment retaliation claim); *Antoine v. Uchtman*, 275 F. App'x 539, 2008 WL 1875948, *2 (7th Cir. April 29, 2008)

11

("[T]he Constitution does not compel guards to address prisoners in a civil tone using polite language.").

Finally, Mr. Smith conducted the OII investigation. He upheld the confiscation of the documents on a slightly different basis—that these documents contained inmates' medical information and therefore violated Offense 247. While the reasoning shifted, the ultimate conclusion was the same: Mr. Passmore's possession of the documents violated an IDOC policy. Mr. Passmore has not designated evidence beyond his speculation that there was any other basis for confiscating the documents. *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (non movant receives the "benefit of reasonable inferences from the evidence, but not speculative inferences in his favor" (cleaned up)).

Mr. Passmore nevertheless alleges that he has shown retaliatory motive because Defendants' enforcement of Offense 247 conflicts with another IDOC policy on providing inmates access to the courts. But it's not clear that they violated that policy, which provides that the IDOC "shall provide the incarcerated individuals with the ability to prepare, copy, and mail legal documents in accordance with statute, court orders, *and Department policy*." Dkt. 94 at 127. Further, violation of an IDOC policy is not itself a Constitutional violation. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of departmental regulation and practices." (cleaned up)). Any potential access-to-courts-policy violation is therefore too tenuous to support a

12

jury's finding of a retaliatory motive. *Cf. Kidwell v. Eisenhauer*, 679 F.3d 957, 969 (7th Cir. 2012) (A "systematic abandonment" of policies "is circumstantial evidence of a retaliatory motive," but a defendant is not "require[d] [to] rigidly adhere to procedural guidelines in order to avoid an inference of retaliation.").

In short, Defendants are entitled to summary judgment because Mr. Passmore has not shown that they were motivated by retaliatory animus. Because the Court concludes that Mr. Passmore's retaliation claim fails on the merits, it need not address Defendants' argument that they are entitled to qualified immunity.

## IV.
## Conclusion

Defendants' motion for summary judgment is **GRANTED**. Dkt. [84]. Final judgment consistent with this Order and the Court's May 12, 2023, Screening Order, dkt. 25, will issue in a separate entry.

**SO ORDERED.**

Date: 3/25/2025

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MICHAEL PASSMORE
962822
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
1946 West U.S. Hwy 40
Greencastle, IN 46135

All Electronically Registered Counsel